[S. F. No. 2719.    Department One.—June 13, 1903.]

## CALIFORNIA WINEMAKERS' CORPORATION, Respondent, v. FRANK SCIARONI, Appellant.

CORPORATIONS—POWER OF SECRETARY.—The secretary of a corporation has no power to release or transfer its property, in the absence of authority express or implied, and with no authorization or ratification by its board of directors.

ID.—TRANSFER OF WINE—ACCEPTED ORDER—PERMISSION OF SECRETARY TO SELL—MISTAKE OF FACTS—RECOVERY OF PROCEEDS.—Where the appellant transferred a quantity of wine to the plaintiff corporation, under an agreement that after the corporation should pay from the proceeds thereof an indebtedness of the appellant thereto it should then pay the amount of appellant's indebtedness to a bank, in favor of which the corporation had accepted an order

from appellant, a subsequent permission given by the secretary of the corporation to the appellant to sell part of the wine for his own benefit, given under a mistake of facts, cannot authorize appellant to retain the proceeds of such sale contrary to the terms of the agreement with the corporation and of the unrevoked order. The corporation was entitled to recover from appellant the amount which it was required to pay to the bank under the terms of the accepted order on account of the sale made by the appellant.

APPEAL from a judgment of the Superior Court of Napa County. E. D. Ham, Judge.

The facts are stated in the opinion.

Bull & Barstow, and H. M. Barstow, for Appellant.

Louis Titus, for Respondent.

COOPER, C.—Plaintiff recovered judgment against appellant for the sum of $994.62, and this appeal is from the judgment, on the judgment-roll and a bill of exceptions. The case was submitted in the court below upon an agreed statement of facts, which facts, so far as material, are as follows: On the twenty-fourth day of February, 1897, appellant, by bill of sale, transferred to plaintiff "about 46,500 gallons of wine, being all wines made and to be made by me or us in 1896, in the cellar of Frank Sciaroni at St. Helena," the wines being further described as dry red wines, 36,000 gallons; dry white wines, 3,500 gallons; fortified wines, 7,000 gallons. The bill of sale was duly acknowledged and recorded. At the time of the transfer, appellant was indebted to the Carver National Bank of St. Helena upon a promissory note for $5,000, secured by a mortgage upon the said wines, and he was also indebted to plaintiff in the sum of $2,500. He gave plaintiff a written order, requesting it to make payments on account of the wine so transferred, to the Carver National Bank of St. Helena, after deducting the $2,500 due to plaintiff. Plaintiff was notified of said order by said Carver National Bank, and accepted the same, and agreed to pay the money as therein directed and requested by appellant. The wines were to be kept stored by appellant, and delivered by him from time to time as directed

by plaintiff, and plaintiff agreed to pay for the same from time to time, as sales were made, the average price received by it after deducting charges and expenses. About March 6, 1897, the Carver National Bank discharged and released of record its said mortgage, without the knowledge or express consent of appellant. On August 24, 1897, appellant wrote to plaintiff as to shipping the wines, or a portion thereof, to plaintiff's warehouse, and asking as to when he could ship them. Plaintiff replied, through its secretary, by letter of date August 25, 1897, directing a portion of the wines to be shipped to it, and in the letter it was said: "We are not prepared at the present time to take the sweet wines into our cellar. If you desire to do so, you are at liberty to sell the 7,000 gallons of sweet wine independent of the corporation, and realize on it, the proceeds going direct to you. This is a dry-wine corporation, and we do not exercise any control over sweet wines; if, however, you have no facilities for disposing of the wine, if you will send us samples and name a price you will be willing to take for the same, we will endeavor to sell it for you, paying the proceeds to you when the wine is paid for." At the time the said letter was written none of the other officers or directors of plaintiff knew anything as to its being written, and the secretary who wrote the letter had forgotten about the order and its acceptance, and the letter was written under a mistake of the facts. After receipt of the said letter, by its authority, and not otherwise, appellant sold the sweet wines for $1,064.65 and used the money in his business. Thereafter, plaintiff was notified of the sale by the Carver National Bank, and required to account for and pay over to said bank the proceeds of the sale of said sweet wines. Plaintiff thereupon demanded of the appellant the proceeds from the sale of said sweet wine, but appellant refused, and still refuses, to pay the same to plaintiff or to said Carver National Bank, but claimed, and still claims, the right to retain the same under the authorization of the said letter. Thereafter, the plaintiff, upon the demand of the Carver National Bank, and without the consent of the appellant, paid to said bank the sum of $994.62, which sum was by said bank indorsed upon the

said note and mortgage. Plaintiff has received sufficient money from the proceeds of sales of wine to pay the $2,500 referred to in said order.

Upon the above facts the plaintiff was entitled to recover the proceeds of the 7,000 gallons of sweet wine, as described in the bill of sale to plaintiff. Upon the faith of, and in consideration of, the transfer of all of appellant's wines to it, plaintiff accepted the order of appellant upon it for the proceeds thereof, and agreed to pay the money from sales thereof to the Carver National Bank, except the $2,500 due to plaintiff from appellant. At the request of the appellant, the plaintiff accepted the order and became liable thereunder to the Carver National Bank. The bank acquiesced in the sale, released its mortgage, and thus changed its position. It thereafter relied upon plaintiff to pay to it the proceeds of all sales of said wines, as per agreement. Without the release of the mortgage, the plaintiff could not have obtained a clear title to the wines. It was evidently the intention of appellant, when the wines were sold, that both plaintiff and the bank should be paid. After they were paid, the balance of the purchase price would, of course, have belonged to appellant. If the bank has received more than the amount due it by appellant, it is liable to appellant for such sum. But appellant should not be allowed, after conveying the wines and thus transferring the title to plaintiff, and after directing and requesting the payment of the proceeds to his creditors, and after plaintiff had become liable to the bank, to sell a portion of the wines and apply the proceeds to his own use. Good faith and honesty required of appellant that the money obtained for the wines sold by him should be applied as agreed at the time of the transfer. The law requires of him the same thing. Nor does the letter written by plaintiff's secretary change the result. It was written under a mistake of the facts, and without the knowledge or authority of plaintiff. The secretary of plaintiff could not release, sell, and convey its property, in the absence of authority, expressed or implied, and with no authorization or ratification by its board of directors. There was no consideration paid by appellant for the release or attempted re-

conveyance of the sweet wine. And, more than this, it was not in the mind of plaintiff's secretary when he wrote the letter that the appellant would not use the money obtained for the wines as per the order and agreement. The letter appears to have been fair to appellant, and he must be fair and honest with plaintiff. The result of this decision is not that appellant shall not have the proceeds of the wine sold by him, but that the proceeds shall be applied as per the order which the plaintiff had accepted. Appellant relies upon the fact that the bank having voluntarily released its mortgage the money could not be applied to the note secured by the mortgage, because it was no longer an enforceable obligation. This contention hardly seems worthy of discussion. It was evidently contemplated by all the parties that the mortgage should be released. The order to plaintiff was to pay all moneys to the Carver National Bank. The order was never revoked. It was not the duty of plaintiff, while paying money by the express request of appellant, to investigate the purposes of the payments or the application of the money after it was paid.

It follows that the judgment should be affirmed.

Haynes, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

Van Dyke, J., Angellotti, J., Shaw, J.